and this is 24-7-0-1-7. May it please the court, Carl Hennis for Sean Baker, and I'm going to try my best to reserve two minutes for rebuttal. We're here today because a district court excluded evidence that went to the heart of Baker's defense. This case turned entirely on the credibility of a single witness, DP, a 12-year-old girl who first made her allegations of sexual abuse while hallucinating in the hospital. The government repeatedly told the jury that DP couldn't possibly have fabricated detailed allegations of sexual abuse. But when Baker tried to introduce YouTube videos that directly refuted that claim, by showing that DP had made up fictional stories about sex just months earlier, the district court excluded the videos under federal rules of evidence 412 and 403. The district court misapplied both rules. The YouTube videos fall outside both rule 412's plain text and its purpose, and rule 403's extraordinary remedy was not warranted here because the videos had clear probative value, they went to DP's credibility, and they pose little, if any, risk of prejudice or confusion. And even putting aside the rules of evidence, the Constitution does not permit a conviction in a case like this, where a defendant is denied the opportunity to confront his accuser with evidence that casts doubt on the reliability of her testimony. This court should vacate Baker's convictions and remand for a new trial where the jury can receive a full and accurate picture of DP's credibility. I want to start with rule 412. That was kind of the meat of the dispute in the trial court. And it's really important at the outset that rule 412 does not bar all sex-related evidence. This court's decision in AAS makes that clear. It bars only evidence raised for two specific purposes, to prove an alleged victim's sexual behavior or to prove an alleged victim's sexual predisposition. And here, the fictional stories in DP's videos have nothing to do with either DP's prior sexual behavior or her inclination to engage in sexual behavior. The comments on sexual behavior specify that behavior can be features of the imagination. It can involve sexual fantasy, correct? Correct. So if we then look at the phrase sexual predisposition, that phrase could be interpreted rationally, could it not? A predisposition to create sexual fantasies. I don't think that's quite right. So I think that sexual fantasies are private thoughts. They're imaginary scenarios that reflect... I don't think that's quite right. They're private. They're not fictional narratives created for an audience, posted publicly for an audience. Every case I've seen that involves sexual fantasies involves an alleged victim fantasizing about her own conduct. And that makes sense because rule 412 is concerned with the victim's conduct. It's not concerned with fictional stories about other things that are outside of her, involving fictional characters. And I think... I haven't found a case remotely similar to this that has excluded evidence under rule 412. Or admitted it. I mean, is your first impression fair? To some extent, but the default under our system of laws, if it's relevant, it comes in. So it's kind of the burden on the government to... Maybe under 403 or 402, but 412, I mean, we have to interpret 412. Absolutely, but I think the default is the videos come in unless they fall under 412. And so I think the closest thing that I've found is these cases where there's been a prior false allegation of sexual abuse. And do those fall under rule 412? And there's a little bit of a circuit split there. And I think that situation is a little different because A, it involves an actual victim's, you know, her conduct, making up conduct about herself and her activities. And B, those allegations aren't the kind of thing that are publicly published on the Internet for anyone to see. So they implicate a little more, you know, rule 412's policies. But even then, courts generally say, if it's clear that the allegations of the prior sexual assault are false, if we know they're false, then there's no bar to introducing them under rule 412. Can I ask you a question? Let's say it's an adult. Let's say it's an adult female who writes X-rated novels, or just romance novels that involve components of sex. And she has many publications, and then she claims that she was compelled to have sex. And the defendant is arrested, and at the trial says, well, I want to exhibit one. Exhibit one is going to be her first romance novel because she clearly has the capability, the inclination to make out sexual fiction. And that's exactly what she did with me. She just made it up. And we know that she has the capability and the willingness to do it because she has many publications to her credit. Does that come within rule 412? I don't think it would because it's not relevant to her sexual behavior or her sexual predisposition. Okay, let's say she makes up all of these stories in her head. So you're saying if she makes up the sexual stories in her head, just doesn't put it on paper, now that is a sexual predisposition, right? Because of the comment that fantasy can be sexual behavior. So as I understand it, you're drawing the line between you lose that component of sexual conduct, sexual behavior, once you express it externally. But if you don't express it, then it comes within 412. Is that the line you're drawing? So I think so. I mean, 412 is certainly, I mean, the policy behind it is protecting victims from invasion of privacy and to prevent them from having to disclose intimate sexual details about their private lives. So it is, it does make a big difference for considering sexual fantasies, whether this is a private, intimate detail of my life. And there's great policy reasons that we don't want to put a witness on the stand and say, have you ever fantasized about having sexual relations with the defendant? That is completely inappropriate. But once you put them out into the world, and once they don't involve your sexual conduct, they involve sexual conduct of fictional characters, admittedly fictional characters, the government admits that these are completely fictional characters, then that is no longer sexual predisposition, that's no longer sexual behavior. That falls far outside of Rule 12. And again, I mean, the government hasn't cited anything remotely similar that would apply something like this in this case. And here we have this. May I ask a question? What's really bothered me in this case is the advisory comment note, because it talks about sexual, the alleged sexual predisposition, whether offered as substantive evidence or for impeachment. Now, I've been listening to you, and how could you use this information, particularly in light of the government's comment that, what, no 12-year-old could make something like that? I forgot exactly the language. How could you use this information other than for impeachment? So, Judge Baldock, I think the important thing about the commentary is that it only applies if the evidence actually falls under Rule 12, or 412. It only applies if the evidence is being offered by the defendant to prove either other sexual behavior or sexual predisposition. And if it is not being introduced for one of those narrow purposes, then impeachment, it doesn't matter what purpose it's introduced for, because it is admissible evidence. And the Sixth Circuit Kettle decision, I believe it is, they recognize this. They say two narrow purposes for this evidence, that it's prohibited. And if it's not introduced for either of those purposes, then it's fine to come in, even for impeachment. So the first thing we have to... So how would you enter, as far as your objection to the trial court's failure to let you use that? I'm not quite sure on what basis. In other words, were you using it to disprove the government's statement that no 12-year-old could do this? Or what other basis would you be admitting it for? I need to hear your explanation on that. Exactly. The government repeatedly told the jury that she could not have made this up. And they used every adjective in the book, manufacture, concoct, craft, make up. And because of the exclusion of this evidence, we could not rebut that. So if the government gets to tell the jury that she couldn't have made it up, then the defense has a right to show the jury that she could have. So that went unanswered in closing arguments and in evidence generally. And the government, in their briefing, kind of ignores this, that they repeatedly make this argument. And so even putting aside Rule 412, we have the Confrontation Clause backup, which says that a defendant gets to introduce facts that could make the jury doubt the reliability of the witness's statement. And that's especially the case when it's the only witness to testify to an important issue, where that testimony is uncorroborated, and where the government's case hinges on the fact that that witness's credibility. And again, if the government gets to say that she couldn't have made this up, under the Confrontation Clause, the defense gets a right to show that she could. Well, we typically consider that under opening the door or invited error. But you haven't argued invited error. You haven't argued that it's opened the door, have you? And so it seems that we're unfortunately stuck with interpreting the language in Rule 412. In other words, it seems like the issue would be the same legally for us, irrespective of whether or not the government had argued once or multiple times that DP could not have made that up. I think you're probably right that it's the same analysis either way. But I do think it adds something to the Confrontation Clause argument, because in this Court's decision in Begay, which we cite in the briefs, this Court emphasizes the fact that this crucial testimony, the government raised a theory in their closing, and they emphasize this particular thing. And because of the evidence that was excluded, the defense essentially could not answer that testimony. So I think it does go to the Confrontation Clause analysis, and it certainly goes to the harmless error analysis. If we conclude that the evidence was inadmissible under Federal Rule of Evidence 412, would you still argue that there was a violation of the Confrontation Clause if the evidence was properly excluded under a Federal Rule of Evidence? Absolutely. And that's the exception in Rule 412, 412C3, I think. But it specifically says that the Confrontation Clause, you know, an exception to Rule 412 is if excluding the evidence would violate the defendant's constitutional rights. I want to briefly go to Rule 403. Let me stop you for just a minute. So just so we walk away here with something concrete on that, what's your best, other than the exception that's contained in the rule, what case do you have applying that exception that is particularly helpful to us as far as you're concerned? So I think Begay is the case that applies it in the Rule 412 context. I think Robinson is another case. It's not in Rule 412 context, but it's applying the Confrontation Clause analysis. And that's the case where there was only one witness that could speak to a particular issue. It was uncorroborated. And this Court said it was crucial that the jury heard evidence that might cast out on that witness's credibility, because the jury received an inaccurate and incomplete picture of the defendant's credibility. And that is exactly the situation we have here, because the government was able to tell the jury, you know, there's no reason that this 12-year-old would be able to make this kind of thing up. And we know there is, because she had these fictional videos out there. I want to move very quickly to Rule 403. This is an extraordinary remedy. It's used sparingly. The probative value is obvious. It goes right to the crucial issue in the case. The government didn't even offer below that it would be prejudicial to introduce this kind of evidence. The theory now is incredibly speculative. And there's no, you know, issues of confusion or anything. This is just, you know, there's no way that these confusion, prejudice substantially outweigh the probative value. And our legal system, the default is admission. And these should have been admitted here, especially when you see what the government said in its closing argument, that Baker was not able to rebut. Thank you. Let me give you one minute for rebuttal. Good morning, Your Honors. Lisa Williams, representing the United States of America. I want to pick up really quick where we left off on that 403 analysis. And I'm going to return to 403 later. But this is an issue that the defense raised in the reply briefing as well, that the government's argument about unfair prejudice is waived or untimely. The district court, specifically in its ruling excluding the evidence under 403 at the motion eliminating stage, found that it would create unfair prejudice. And so there's no waiver. There's no untimely issue with this unfair prejudice prong. The government is defending the district court's ruling where it found that exact ground. And I just wanted to address that, because I don't understand where this argument keeps coming from, because that's just simply not the case with the record on this appeal. Now, turning to the 412 argument, this court has to first decide whether or not the evidence falls within the ambit of Rule 412a. If it does, then it will turn to the 412b argument, which is that's where the confrontation clause argument is embedded, and whether or not exclusion of the evidence would violate the confrontation clause. And then if it finds that there is no firm on those grounds. And I really am not going to get to 403, but I do want to say, you know, even if the district court erred with 412, even if the evidence falls outside of 412, and so a 412 analysis isn't necessary, there is still the issue of the 403 analysis. And so in many ways, this court doesn't even need to reach the 412 argument to affirm and decide this case, because there is the 403 issue. What's the prejudice under 403? Oh, I mean, it's enormous, Your Honor. In the context of the government raising the idea that she couldn't make it up? Sure. The prejudice is everything that is in the commentary and notes of Rule 412. Okay. These have to be separate, don't they? No. It's the rationale underlining 412. The enormous risk of prejudice that a jury may latch on to when evidence of sexual behavior or sexual disposition of a witness is introduced in a trial. The Congress had to draft a whole rule about the risk of prejudice that will arise when this type of evidence is admitted at trial. Doesn't that, though, speak to the idea that you can't then shoehorn 412 back into your 403 analysis if 412 doesn't apply? No, because if 412 doesn't apply, there is no 412 analysis, but you still have to analyze whether the evidence is admissible pursuant to 403. I think what I may agree, the 403 analysis is less imperative if you exclude under 412 because they have similar- The 403 analysis doesn't matter if you properly exclude it under 412. Correct. And I guess that's the, it's superfluous if you exclude under 412 because many of the same things that you're going to look at are 412. But if you find- So assume in the context of this case, not just general matters-  But the context of this case, what's the, assuming 412 doesn't apply, what is the prejudice to the victim in this case or to the government? The prejudice to the victim is that the jury, and I cited the case about what an unfair prejudice means, and it's the Isabel case. And unfair prejudice is when the jury has an undue tendency to suggest a decision on an improper basis, commonly, though not necessarily an emotional one. And the risk is that the jury would look at this little girl and see that she had these sexual videos out there and say, nice girls don't make up sexual fantasies. Nice girls don't engage in this behavior. And because you did these dirty things that we don't think you should have, we don't want to believe what you say. And that- I mean, the problem, though, is she didn't say it. The government, this is all in response to something that the prosecution said. The witness, the young lady didn't say it on the stand herself. The government said she couldn't make it up, she didn't have any way to know these details, and, but it turned, so- Well, I'll say, there are some interesting cases in the 412 context that say evidence should come in to explain a child victim's knowledge of sexual terms and sexual things like penetrative sex. But as I believe it was Judge Bacharach noted previously, that wasn't the reason the defense sought to introduce this evidence prior to trial. They didn't say that the rule for, that these videos were needed to explain her vocabulary and knowledge of sex. If they had, I think that this would be a very different appeal presented to this court. The written reason that the defendant gave in its response to the government's motion in Lemonade for why they wanted to omit the videos was because they were going to, quote, offer it to show that the victim is a talented storyteller who, a year prior to this outcry, told fictional accounts of sexual behavior. And so now that, that's the reason that they gave the court. And we cannot ignore that that's how- Did they change, did their justification morph at trial? Not that they brought to the court's attention, Your Honor. I think they certainly could have said, we would now renew our request to omit these videos since the government has said X, Y, and Z. But they didn't do that. And so that is not a ground that they can argue before this court. They are stuck with the record that they have- So from a preservation standpoint, it's your position that they're stuck with their explanation that they made before trial, that they made no additional argument and made no additional plea to the court to allow them to introduce it at trial? Correct, because we're on abuse of discretion. And if you never raise an argument to the court- No, I understand. I'm just, I'm asking you to affirm that what I'm saying about the record is true. I agree. Yes, I'm agreeing with you, Judge. Because, again, it's not that you're stuck with your initial offer in writing, but you are stuck with what you put forth before the district court when the record ends. And the end of the record is the end of trial. And so at that point, even if they had raised it in their motion for a new trial motion, they did do a written motion for a new trial. That could have been another opportunity to ask for a new trial and say, hey, these videos should have come in on these grounds because these are the things the government argued in closing. They didn't even do that. And so they had several opportunities to pivot and readjust their argument, and they didn't. And to do so now on appeal is invited error or a waiver or a forfeiture. I think the most interesting argument, legal argument, is whether or not these videos fall within the scope of Rule 412A. I think if they do, if this court concludes that they do, the 412B analysis is pretty straightforward because, again, these are being offered as generalized impeachment. And this circuit and many others have been very clear that generalized impeachment is not a recognized exception to 412B, and it doesn't create a confrontation clause issue. So the real meat of the issue here is this 412A. The defendant has to prove that the court abused its discretion in finding that the videos fell within the scope of 412A. And first of all, the court said the clips would be offered as evidence of DP's sexual predisposition. That is a finding of fact the district court made that's in its written order denying the new trial motion for judgment of acquittal. That finding of fact, because we're on abuse of discretion, the defense has to establish was clearly erroneous. This is a district court that watched the videos and also sat through trial and had access to all of the information in the case. I have gone through the record, and I could be wrong. I make plenty of mistakes, but I could not find that the videos were provided anywhere in the record to this court. I don't have a clue how the defense can convince this court that the district court made a clearly erroneous factual determination after viewing videos that this panel hasn't even viewed. How do . . . I have a question about that, and I was wondering why we don't have the YouTube videos, but I don't know that it's his fault because he doesn't have an obligation to supply an appendix. It may be that it was the fault of the district court clerk in failing to properly compile the record. At the same time, Your Honor, you will have to . . . I mean, to reverse the district court, you'll have to find that it abused its discretion. And without watching those videos, how can you determine, especially with respect to the 403 argument, how can you find that the district court abused its discretion in finding that the content of these videos were so overly prejudicial compared to their probative value? Well, that may be true on Rule 403. On Rule 412, it seemed to me that both sides agree that there's a sexual component to the YouTube videos. And so I had thought that, at least under the Rule 412A analysis, that they're either sexual or they're not, and we either accept the defendant's argument about private thoughts versus externally expressed thoughts or not. But it seemed to me that everybody agreed that the four YouTube videos do have a sexual component. That's true, Your Honor. Absolutely, there is a sexual component. But what defense claims is that they were not offered to show predisposition, and the district court made a specific finding that they were offered to show predisposition. And that's the distinction that the government's trying to get at. Let me ask you a question. I mean, it seemed part of the problem here is, in most of these cases, this evidence is being offered to show something that the victim did. Okay? And she agreed to it. She knew what she was doing. That the victim had the ability to consent, these types of things. And in this, the whole argument from the other side is, we didn't have sex. This never happened. And so nobody's, and you look at this, prohibited uses. Evidence offered to prove that a victim engaged in other sexual behavior. I mean, that's not the reason that's being offered, right? You agree with that, don't you?  What sexual behavior are they trying to prove she engaged in? As I mentioned in the brief, Your Honor, sexual behavior includes sexual fantasies. And so to the extent that these YouTube videos are a manifestation of her sexual fantasies, they do constitute sexual behavior. But the purpose, they're not offering it to show that she did that, did they? Well, that's what the defense claims, and the court found otherwise. And the government believes that that's not true. And that's the rub. That's the rub. That's the rub. It's how this court sifts through the defense's purported purpose in offering them, which is not to show sexual disposition or sexual behavior. We want to show it. We want to introduce it to show it didn't happen. Well, they want it that she fantasizes and that she lies. And here's the thing. They also, if this is what they want to do. It's different, though. They're wanting to show, they're wanting to offer it to prove that she didn't engage in sexual behavior with him. Well, that she's lying about the sexual behavior she's claiming she engaged in. Correct. But not that it didn't, because she's lying is why they want to offer it. The behavior never, the sex never took place because this little girl's a liar. That's their argument. Because she testified and she said this all took place. Well, they certainly want to make their case that she's capable of making it up. Right? But she did make it. I mean, they have to say she's making it up, Your Honor. Because she sat at trial and she said these things happened. I understand. I understand. But at the same time, it lets you off free because you get to get up there and say she couldn't make it up. But they're not allowed to say that she did under your theory. Well, that's what I was going to say is there was a way to get this evidence in without the YouTube videos, right? If they wanted to allege that she's a storyteller, hey, you are involved in making videos on YouTube. And those videos are works of fiction. And you see yourself as a storyteller. And you engage, you enjoy telling stories. Like, you don't have to mention the sex part, Your Honor. You don't have to. But the sex part is what matters. Because you said that she was too young to do it, that she couldn't have understood enough to make that up. The sex part is what dirties her up and makes the jury not want to believe her, Your Honor. That's why the sex part matters to them. The sex part is also what you're using as a sword to prevent them from defending themselves. So why should you be able to use it? Well, listen, Your Honor. A lot of the comments that they were made in closing, I believe, were also made in rebuttal. And the government's provided a little bit more leeway in responding to what the defense arguments are, saying that she made it up. And so there is that component of opening the door. It seems like everybody thinks the other side's opened the door. Then we're doing our job right. Aren't we, Your Honor? If I may, I really did want to talk about just one point with harmless error. I see I'm out of time, but the he said, she said.  I'm going to play like King Solomon. I'm going to give you one minute to do that, and I'm going to give you now two minutes. Perfect. And I'm not going to interrupt. And I'm going to give him zero minutes. And this not only goes to harmless error, but it goes to the materiality analysis. It's an important thing, the strength of the government's case. This is not a he said, she said case. This is a she said, and he kind of agreed case. Because let's not forget about his confession, where he told the investigator that this little girl came on to him. Now, and then he said, I regret how far things went. So when we look at the totality of the evidence here, this isn't just some little girl getting on the stand. This is a man sitting down, post-Miranda, saying that this child came on to him, and he regretted how far things went. And that is really strong evidence for the government in these types of cases. Because as we all know, six- and seven-year-old girls don't come on to their stepdads. That just doesn't happen. So that's the one thing I wanted to mention in terms of the strength of the government's case. I appreciate the extra time. Before you leave, Judge Baldock, do you have any questions? No. Other than the fact that I do have a comment that 4.012 says a lot of this stuff. So what we're doing was touching it. OK. Thank you very much. All right. Thank you. I think he's directing that at me. Real quickly on the fact that if you all don't have the videos, I apologize. We wrote a letter to the Oklahoma District Court and asked them to send them to you, so we can look into that. On Rule 4.12, sexual predisposition, as Judge Carson pointed out, is just not at issue here. There's no argument that DP had any inclination to engage in sexual activity because we said she didn't. Our whole theory is that she didn't engage. And I think Judge Carson brings up a good point. It's that these cases are usually consent-type cases. This is an extremely strange application of Rule 4.12 to say that you can't – that Rule 4.12 bars evidence that you're arguing shows that sexual conduct didn't occur. That's strange. Isn't that the rub? Is sexual predisposition conduct, or does it include both sexual – the predisposition to create sexual fantasies as well as the proclivity, the predisposition to engage in sexual conduct? You've made an excellent argument, but it's a – there's two meanings, arguably, to the term. Everything I've seen about the predisposition is a predisposition and inclination to engage in sexual conduct. That's what Federal practice and procedure says. And, again, that kind of plays into these cases about false allegations. The government says that our evidence is just generalized impeachment evidence, so that it's not – doesn't implicate the Confrontation Clause, but it's not generalized impeachment evidence. This is evidence that, you know, makes her specific testimony less believable on this point. And that's something that the Confrontation Clause absolutely protects. We have to bring this in, especially if the government's going to be able to say in evidence in closing that she couldn't have made this up. And on harmless error, there's two things to look at. Their closing argument, which I've already touched on, and their own investigators said if he had seen the YouTube videos, he might have changed his mind. The jury might have, too. Thank you. Okay. Thank you very much. Judge Baldock, do you have any questions? Okay. Both sides think your briefing and arguments were excellent, as we always expect of both of you. And court is adjourned until 8.30 tomorrow morning.